BANK OF SAGINAW v. TITLE & TRUST CO. OF WESTERN PENNSYLVANIA.

(Circuit Court, W. D. Pennsylvania. December 26, 1900.)

No. 23.

1. BANKS—TRUST COMPANIES—POWER TO ISSUE CERTIFICATES OF DEPOSIT.
   In the absence of statutory provisions on the subject, a trust company authorized to receive money on deposit has lawful authority to issue certificates of deposit therefor in the usual form.

2. FEDERAL COURTS FOLLOWING STATE DECISIONS—QUESTIONS OF COMMERCIAL LAW.
   The courts of the United States are not controlled by the decisions of the state courts on questions of general commercial law, and a federal court will follow the decisions of the supreme court as to the negotiability of an instrument, notwithstanding a contrary holding by the courts of the state where the transaction took place.[1]

3. CERTIFICATES OF DEPOSIT—NEGOTIABILITY.
   A certificate of deposit in the ordinary form, payable to the order of the depositor, is a negotiable instrument possessing the qualities of a negotiable promissory note.

On Motion for Judgment for Want of a Sufficient Affidavit of Defense.

Robinson & McKean and R. B. Ivory, for plaintiff.
Murphy & Hosack and Edward Willson Boyd, for defendant.

ACHESON, Circuit Judge. The plaintiff is a corporation of the state of Michigan, engaged in the banking business at Saginaw, in that state. The defendant is a corporation of the state of Pennsylvania, doing business at Connellsville, Pa. The suit is upon six certificates of deposit issued by the defendant, and of which the

[1] State laws as rules of decision in federal courts, see notes to Griffin v. Wheel Co., 9 C. C. A. 548, Wilson v. Perrin, 11 C. C. A. 71, and Hill v. Hite, 29 C. C. A. 553.

plaintiff is indorsee and holder. These certificates are alike in form, and the following copy of one represents the general character of all of them:

$500.00.                                                                    $500.00.   No. 2.

Title & Trust Company of Western Pennsylvania,
Connellsville, Pa., Feb. 5, 1900.

J. F. Barrows has deposited with this company five hundred dollars, payable to the order of J. F. Barrows on return of this certificate properly indorsed.

W. M. Ruth, Treasurer.

Indorsed: J. F. Barrows.

*Certificate of Deposit. Not Subject to Check.*

The sworn statement of claim sets forth that on or about February 12, 1900, J. F. Barrows, having indorsed each of these certificates in blank in the usual manner, presented them, so indorsed, at the plaintiff's banking house in Saginaw, asking that they be cashed; and that thereupon the plaintiff, in the usual course of its business as a bank, received and cashed them, paying therefor full value. These allegations are not denied in the affidavit of defense, and there is no suggestion therein that the plaintiff is not a bona fide holder for value of the certificates. Upon the pleadings the plaintiff must be so regarded.

That the defendant company is authorized to receive deposits of money is conceded, but it is denied that it had lawful authority to issue such certificates as those in suit. There is, however, no statutory or other inhibition of such certificates. These certificates are in the form commonly used everywhere in the commercial world by bankers and companies receiving money deposits, and the defendant's right to issue them in the course of its business and as an incident thereto is not to be doubted. At any rate, I do not see that it is open to the defendant to raise the question.

The case, I think, turns upon the question of the negotiability of the certificates sued on. Now, that such a certificate of deposit is a negotiable instrument possessing the qualities of a negotiable promissory note was determined by the supreme court of the United States in Miller v. Austen, 13 How. 218, 228, 14 L. Ed. 119. To the same effect are the decisions of all the state courts except those of Pennsylvania. 5 Am. & Eng. Enc. Law (2d Ed.) 805. The supreme court of Pennsylvania has held that a certificate of deposit, although containing negotiable words, has none of the incidents of a negotiable promissory note. Patterson v. Poindexter, 6 Watts & S. 227; Bank v. Mangan, 28 Pa. St. 452; London Sav. Fund Soc. v. Hagerstown Sav. Bank, 36 Pa. St. 498. There is, however, no statute in Pennsylvania regulating this matter, and the question here is one of general jurisprudence. That courts of the United States are not controlled by the decisions of the state courts on questions of general commercial law is authoritatively settled. Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865; Oates v. Bank, 100 U. S. 239, 25 L. Ed. 580; Brooklyn City & N. R. Co. v. National Bank of New York, 102 U. S. 14, 29, 31, 26 L. Ed. 61. Mr. Justice Bradley in Railroad Co. v. Lockwood, 17 Wall. 357, 367, 21 L. Ed. 627, said: "But on a question of general commercial law, the federal courts administering justice in New York have equal and co-

ordinate jurisdiction with the courts of that state." In Brooklyn City & N. R. Co. v. National Bank of New York, supra, the question related to the legal effect of a transfer by indorsement of negotiable paper before maturity as mere security for an antecedent debt. The transaction occurred in New York, and the question had been there determined by decisions of the highest court of the state. It was contended that, as the bank was located in New York, and the other parties were citizens of that state, and the contract had been made there, the federal courts were bound to follow the decisions of the state court, whether they met their approval or not. The supreme court of the United States rejected the argument, refused to follow the state decisions, and, speaking by Mr. Justice Harlan, said:

"The decisions of the New York court which we are asked to follow in determining the rights of the parties under a contract there made are not in exposition of any legislative enactment of that state. They express the opinion of that court, not as to the rights of parties under any law local to that state, but as to their rights under the general commercial law existing throughout the Union, except where it may have been modified or changed by some local statute. It is a law not peculiar to one state, or dependent upon local authority, but one arising out of the usages of the commercial world."

This is very pertinent to the case in hand, and furnishes a complete answer to the contention that the question at issue is governed by the decisions of the supreme court of Pennsylvania because this state is the place where the contracts were made and where they are to be performed. The parties to the commercial instruments in suit did not contract with reference to the state decisions any more than they did with reference to the decision of the supreme court of the United States. They contracted with reference to the general commercial law. In view of the authorities cited, it is clear that upon the controlling question of the negotiability of the instruments in suit the decision in Miller v. Austen is conclusive of this controversy. Judgment therefore must be entered in favor of the plaintiff for want of a sufficient affidavit of defense, and it is so ordered.